(October 22, 1965)

■ ROBERT SARON, as Administrator of the Estate of DAVID SARON, Deceased, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 33026.) — GIBSON, P. J. Appeal from so much of a judgment of the Court of Claims as denied recovery for the conscious pain and suffering alleged to have been suffered by claimant's intestate by reason of negligence in the medical treatment afforded him in a State hospital, which he entered as a voluntary patient upon a diagnosis of schizophrenia; claimant in his brief contending that the hospital was negligent in its care of decedent's diabetic condition and in administering an experimental drug in excessive doses, thereby causing organic brain damage with resultant pain and suffering. Claimant's medical expert, who had never seen decedent, concluded from his examination of the records that the organic brain damage disclosed on autopsy was caused by inadequately controlled diabetes and by isonicotinic acid hydrazide, called Compound 100, a drug characterized by this expert as experimental, which was administered in treatment of decedent's psychiatric disturbance. The first hypothesis advanced by claimant's expert was countered by the testimony of the physician who attended decedent during his last hospitalization, from June, 1952 until his death on February 19, 1953, that the diabetes was never out of control during that period and that the requisite routine tests were made and were reported to him, whether or not all of the tests made were permanently recorded. In evaluating the conflicting medical proof, the trial court was warranted in accepting that adduced from the attending physician, and the record fails to disclose any basis upon which we could disturb its finding. In respect of the second causative factor suggested by claimant's medical expert, the court properly declined to find, upon the record before it, that the administering of the so-called Compound 100 constituted negligence or caused pain and suffering. Indeed, the testimony as to the allegedly then-known harmful side effects of this medication was equivocal at best and the doctor's opinion that the prescription of the drug was contrary to accepted medical practice at the time, because the side effects were known in 1952, seems to rest on an article published in England in November of that year, which apparently reported but a single case; and his conclusion that the dosage was excessive seems to

have been derived from a report or reports issued subsequent to decedent's death. Further, he conceded that the brain damage "could * * * have occurred other than with the use of Compound 100 ", that " it could have occurred from the abnormal metabolic state, namely, the diabetes." Judgment affirmed, without costs. Herlihy, Reynolds, Taylor and Hamm, JJ., concur.